IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| **RHEAVIA RODGERS,**<br><br>   **Plaintiff,**<br><br>v.<br><br>**HARRIS COUNTY HOSPITAL DISTRICT d/b/a HARRIS HEALTH SYSTEM; YOLONDA WALL, individually; KIMBERLY ELLISON, individually; OMAR REID, individually; JAMIE LARD, individually; and UNKNOWN DECISIONMAKERS REGARDING GRIEVANCE, individually,**<br><br>   **Defendants.** | **C.A. NO. 4:24-cv-00032**<br><br>**JURY TRIAL DEMANDED** |

**PLAINTIFF'S FIRST AMENDED COMPLAINT**

TO THE HONORABLE JUDGE:

Rheavia Rodgers ("Rodgers" or "Plaintiff"), by and through her attorney of record, hereby complains of Defendants Harris County Hospital District; Yolonda Wall, in her individual capacity; Kimberly Ellison, in her individual capacity; Omar Reid, in his individual capacity; Jamie Lard, in her individual capacity; and Unknown Decisionmakers Regarding Grievance, in their individual capacities (collectively, "Defendants"), and for cause of action shows as follows:

1. <u>INTRODUCTION</u>

1.1. This is a First Amendment retaliation case, brought under 42 U.S.C §1983. After Plaintiff Rodgers reported violations of multiple laws constituting subpar patient care and creating an immediate risk of harm to Harris Health's OB/GYN patients, including to the Board of

Nursing, she was subjected to a pattern of retaliatory treatment, terminated, and then denied reinstatement under Harris Health's grievance process even though her grievance was deemed meritorious.

## 2. PARTIES & PERSONAL JURISDICTION

2.1. Plaintiff, Rheavia Rodgers, is a resident of Harris County, Texas.

2.2. Defendant Harris County Hospital District d/b/a Harris Health System ("Harris Health") is a governmental entity that owns and operates hospitals and clinics in Harris County. Defendant has been served and has answered in this lawsuit.

2.3. At all times material to this Petition, Defendant Yolonda Wall is and was Administrative Director of Infection Prevention. Defendant Wall supervised, facilitated, recommended and/or approved Rodgers' termination and denial of reinstatement. Defendant has been served in this lawsuit.

2.4. At all times material to this Petition, Defendant Kimberly Ellison is and was Manager of Infection Prevention. Defendant Ellison supervised, facilitated, recommended and/or approved Rodgers' termination and denial of reinstatement. Defendant has been served in this lawsuit.

2.5. At all times material to this Petition, Defendant Omar Reid is and was Executive Vice President and Chief People Officer. Defendant Reid supervised, facilitated, recommended and/or approved Rodgers' termination and/or denial of reinstatement. Defendant has been served in this lawsuit.

2.6. At all times material to this Petition, Defendant Jamie Lard is and was Administrative Director, Employee Relations. Defendant Lard supervised, facilitated, recommended

and/or approved Rodgers' termination and/or denial of reinstatement. Defendant has been served in this lawsuit.

2.7. The Unknown Decisionmakers Regarding Grievance Defendants are unknown Defendants who participated in, supervised, recommended, facilitated, and/or approved Rodgers' denial of reinstatement in her position. Their identities and service addresses will be supplemented upon discovery.

### 3. PROCEDURAL REQUISITES

3.1 Plaintiff has satisfied all procedural requisites to the filing of this suit.

### 4. SUBJECT MATTER JURISDICTION

4.1. The unlawful practices were committed within the jurisdiction of the United States District Court for the Southern District of Texas-Houston Division.

4.2. This Court has jurisdiction over all claims in this action. The amount in controversy is within the jurisdictional limits of this Court.

### 5. FACTS

5.1. Rodgers was employed by Harris Health beginning on July 5, 2011 for twelve years, until her retaliatory termination on March 21, 2023. She is a Registered Nurse. At the time of her termination, Rodgers held the position of Infection Prevention ("IP") Resource Nurse at Lyndon B. Johnson Hospital.

5.2. Rodgers' job duties were to collect and compile surveillance data regarding infections and outbreaks; investigate, identify and classify patient events and outcomes; conduct outbreak investigations; and participate in identifying and recommending reportable infections in HAI review meetings. Rodgers had no supervisory duties over the OB/GYN department or its doctors, or any other department.

5.3. Rodgers earned high reviews throughout her employment, and was repeatedly promoted during her 12 years at Harris Health. In March 2022, Rodgers' supervisor, Yolonda Wall, gave Rodgers a yearly performance evaluation score of 4.01 "Above Expectations."

5.4. Beginning in August 2022, Rodgers voiced compliance concerns to her supervisor, Yolonda Wall ("Wall"), Administrative Director of Infection Prevention, and then internally via reports to Corporate Compliance in October 2022 and Nursing Peer Review in November 2022 regarding violations of law pertaining to reporting of Surgical Site Infection ("SSI") cases.

5.5. On July 28, 2022, Wall implemented a new query process for SSI surveillance. Pursuant to the process, the OB/GYN department was repeatedly modifying records following Walls' instructions after the fact to avoid reporting hospital-acquired infections, and refusing to report reportable SSI cases per CDC/National Healthcare Safety Network ("NHSN") requirements. Wall and OB/GYN doctors modified surgical notes, in response to cases being designated SSI reportable, and in some cases, even deleted information from one section of the surgical notes and moved it to another section of the notes, in order to change an SSI reportable case to a PATOS designation. This was being done untimely, up to and over 90 days after patient discharge. On multiple occasions, the OB/GYN doctors were actually cutting and pasting text to different areas of the surgical notes, and not following legally mandated modification procedures to preserve the evidence of the original notes. Wall claimed that this was "not a modification" even though the change was made to facilitate changing an identified SSI-OREP case to SSI-PATOS after the fact. Wall ordered training for the Ask My Nurse department to educate the nurses answering patient calls not to ask about "pus." Wall and Dr. Behrens also

        instructed physicians not to document the word "pus" and to only use colors as descriptors, because descriptive colors alone do not meet the criteria to be a reportable SSI. Wall ordered Rodgers to remove multiple SSI reportable cases from the list of such cases reported to NHSN. When Rodgers reported them, NHSN confirmed that these cases met the criteria to be reported. The foregoing actions constituted multiple violations of state and federal laws and regulations related to patient safety and constituted an immediate and material risk of harm to OB/GYN patients at Harris Health whose treatment was being compromised by Harris Health's actions described above.

5.6. Rodgers immediately voiced her concerns about the process in a CUSS email communication to Wall.

5.7. On August 3, 2022, Rodgers escalated her concerns about the MD query process to Dr. Yash Chathampally, Associate Chief Medical Officer and Senior Vice President for Quality and Patient Safety.

5.8. Throughout the first three quarters of 2022, the position of Infection Prevention Manager was vacant. Wall handled supervisory duties of the position in addition to her duties, and Rodgers took on some duties of the position in addition to her duties as IP Resource Nurse.

5.9. On October 4, 2022, Rodgers filed a Corporate Compliance Report regarding her concerns about the MD query process.

5.10. On October 5, 2022, Rodgers was informed that she was not hired as Infection Prevention Manager. Wall was involved in the decision not to promote Rodgers.

5.11. On October 7, 2022, Wall emailed Rodgers with another request to delete SSI information and not report a SSI case.

5.12. On October 24, 2022, Harris Health hired Kimberly Ellison as Manager, Infection Prevention. Ellison was not a RN and did not meet the criteria for the job. Specifically, Ellison's appointment to a position involving supervision of the practice of nursing violated the Nurse Practice Act, Texas Occupation Code §301.353. Harris Health's violation of this law creates a safety risk in that it can lead to decisions which affect patient safety being made or overruled by an unqualified person.

5.13. Rodgers' concerns regarding Harris Health's violation of the Nurse Practice Act creating and magnifying the ongoing safety concerns and exacerbating the immediate risk of harm to Harris Health's OB/GYN patients was quickly validated. As Manager, Infection Prevention, Ellison attended HAI Review meetings and on multiple occasions, overruled Rodgers' and the other trained RNs' recommendations regarding which cases were SSI reportable and ordered them not to report SSI reportable cases.

5.14. Throughout November 2022 through February 2023, Rodgers supplied more information supporting her reports of violations of law pertaining to the non-reporting of reportable SSIs and illegal modification of records after the fact to avoid reporting SSIs, as well as retaliatory actions taken against her for reporting, including to Wall, Ellison, Reid, and Lard. Further, Rodgers complained that Harris Health was having RNs report to a non-nurse, in violation of the Nurse Practice Act.

5.15. On December 29, 2022, Rodgers logged into her peoplesoft account and found a corrective action from December 21, 2022. When Rodgers emailed Ellison and Wall, Ellison claimed it was "saved in error" and deleted it.5.19-

5.16. On January 26, 2023, Rodgers called the Board of Nursing and reported her suspicion that Harris Health was violating the law.

5.17. On January 26, 2023, Rodgers informed Omar Reid, Executive Vice President and Chief People Officer, and Jamie Lard, Administrative Director, Employee Relations, that she had contacted the Board of Nursing regarding her suspicion that Harris Health was violating the law.

5.18. On January 26, 2023, Rodgers reported her concerns of violations of law to Nursing Peer Review.

5.19. On February 27, 2023, Ellison issued Rodgers a corrective action. The reasons alleged for the corrective action were demonstrably untrue and lacked a basis in fact.

5.20. On March 21, 2023, Harris Health, by and through Defendants' actions and decisions, terminated Rodgers. The reasons alleged for Rodgers' termination were demonstrably untrue and lacked a basis in fact. As Rodgers' supervisors, Defendants Wall and Ellison participated in recommending and approving the discipline and termination. On information and belief, Defendants Lard and Reid, in their roles as Executive Vice President and Chief People Officer and Administrative Director, Employee Relations, recommended, approved, consulted on, and/or facilitated the termination decision.

5.21. Defendant Reid is Harris Health's executive officer over Human Resources. In this capacity, he reports directly to the Board of Directors of Harris Health, and the Board of Directors has delegated human resources and personnel matters to him

5.22. On March 27, 2023, Rodgers grieved her termination as she had a right to do under Harris Health's procedures.

5.23. On April 18, 2023, Rodgers filed a formal complaint with the Board of Nursing regarding Harris Health's violations of laws pertaining to patient safety, which created immediate and material risks of harm to Harris Health's OB/GYN patients.

5.24. On July 24, 2023, Harris Health issued a final decision regarding Rodgers' grievance and her employment. Harris Health, by and through Defendants' actions and decisions, refused to reinstate Rodgers in her position, although the grievance was deemed to have merit. Instead, Defendants offered Rodgers an undesirable demotion as her only option to remain employed with Harris Health. On information and belief, Defendants Wall, Ellison, Lard, and Reid, consulted, recommended, and/or approved the decision to deny Rodgers reinstatement in her position.

5.25. Alternatively stated, after Rodgers prevailed on her grievance, Defendants then continued the pattern of retaliation against her by demoting her.

5.26. On information and belief, other individuals at Harris Health were also involved in recommending and/or approving the decision to deny Rodgers reinstatement in her position and offer her an undesirable demotion as her only option to work at Harris Health. The identities of these individuals will be disclosed in initial discovery.

5.27. Meanwhile, the same individuals responsible for the pattern of retaliation against Rodgers carried out the same pattern of retaliatory conduct against others who reported the same concerns. After Rodgers' coworkers Shayla Elliott and Valencya Walker, both of whom held the same position as Rodgers, reported the same patient care concerns as Rodgers to HR and Nursing Practice during the same time frame, Ellison retaliated against Elliott by filing a complaint against Elliott which caused her to be placed under investigation and suspended without pay. Elliott and Walker then fled to other positions.

5.28. The close timing between Rodgers' reporting violations of law and her termination and refusal of reinstatement, evidence that Rodgers was terminated and refused reinstatement in retaliation for her reports of violations of law pertaining to patient safety.

5.29105..   Accordingly, Rodgers was terminated and refused reinstatement because of her reports of violations of law and patient safety concerns, in violation of the First Amendment.

## 6. CAUSE OF ACTION: FIRST AMENDMENT RETALIATION UNDER 42 U.S.C. § 1983 [AGAINST ALL DEFENDANTS]

6.1.   Plaintiff incorporates by reference the foregoing allegations as if fully rewritten herein.

6.2.   Plaintiff reported matters of public concern, including of violations of laws protecting patient safety, including to: her supervisor; to the Administrative Director of Infection Prevention; to the Associate Chief Medical Officer and Senior Vice President for Quality and Patient Safety; to Corporate Compliance; to Nursing Peer Review; and to the Texas Board of Nursing.

6.3.   Plaintiff was denied promotion, disciplined, terminated and denied reinstatement in her position by Defendants because of her protected speech regarding matters of public concern.

6.4.   As a direct result of the retaliation, Plaintiff has sustained and continues to sustain substantial, immediate and irreparable harm, including lost income, lost benefits, emotional distress, and harm to her career, and her professional reputation.

6.5.   Plaintiff asserts claims against Harris Health for damages and injunctive relief.

6.6.   Plaintiff asserts claims against all individual Defendants, in their individual capacities, for damages.

## 7.   JURY DEMAND

7.1.   Plaintiff previously requested a jury.

## 8. PRAYER

8.1.   Plaintiff respectfully prays for the following relief:

9

a. Judgment against Defendant, for lost back and front pay;

b. Lost benefits;

c. Injunctive relief reinstating Plaintiff to her position;

d. Injunctive relief clearing Plaintiff's disciplinary record;

e. Injunctive relief promoting Plaintiff to the position she would have held absent illegal retaliation;

f. Emotional distress damages;

g. Punitive damages;

h. Attorney's fees and costs;

i. Pre- and post-judgment interest; and

j. Such other and further relief, at law or in equity, general or special to which Plaintiff may show she is justly entitled.

Respectfully submitted,

SHELLIST LAZARZ SLOBIN LLP

*/s/ Dorian Vandenberg-Rodes*
Todd Slobin
State Bar No. 24002953
tslobin@eeoc.net
Dorian Vandenberg-Rodes
State Bar No. 24088573
drodes@eeoc.net
11 Greenway Plaza, Suite 1515
Houston, Texas 77046
(713) 621-2277 (Tel)
(713) 621-0993 (Fax)

ATTORNEYS FOR PLAINTIFF

**CERTIFICATE OF SERVICE**

      I hereby certify that a true and correct copy of the foregoing has been served on all counsel of record via ECF on February 1, 2024, in accordance with the Federal Rules of Civil Procedure.

                      */s/ Dorian Vandenberg-Rodes*
                      Dorian Vandenberg-Rodes